UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD JONES, CDCR #K-52736,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL COUNSELOR NICHOLS,<br><br>Defendant. | Case No.  12cv1039 BTM (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>**(ECF No. 27)** |

Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 27.) Plaintiff has filed an Opposition to Defendant's Motion to Dismiss (ECF No. 28) to which Defendant has filed a Reply (ECF No. 29.)

**I.    Plaintiff's Factual Allegations**

In 2010, Plaintiff was housed at Centinela State Prison ("CEN").[1] (*See* SAC at 1,

---

[1] Plaintiff has since filed a notice of change of address indicating that he is currently housed at the Richard J. Donovan Correctional Facility. (ECF Nos. 6, 7.)

3.) On April 2, 2010, Plaintiff was issued a Rules Violation Report ("RVR") in which he was charged with "conspiracy to traffic a controlled substance into a state prison with the intent to distribute." (*Id.* at 3.) On September 23, 2010, Plaintiff was found "not guilty" of these charges at a prison disciplinary hearing. (*Id.*) After the ruling in Plaintiff's disciplinary hearing, Defendant Nichols, as Plaintiff's correctional counselor, informed Plaintiff that "she would be taking him back to the Unit Classification Committee ("UCC") and recommend [that] his overnight family visits be denied permanently." (*Id.*) Plaintiff alleges Defendant Nichols "prepared the documents" and "supplied all reports" to the UCC. (*Id.*)

At the disciplinary hearing, Plaintiff claims Defendant Nichols "acted as the Correctional Counselor Supervisor knowing that she would have the final decision over Plaintiff's case." (*Id.* at 4.) As a result, Plaintiff claims his "equal protection right to have a fair and impartial [UCC] hearing by violating their own rules and regulations" was violated. (*Id.*) Plaintiff claims the CDCR's rules and regulations provide that a person who has a "predetermined belief of the inmate' guilt or innocence shall not hear the charges or be present during deliberations." (*Id.*) Plaintiff claims that he did not receive a fair and impartial hearing because Defendant Nichols sat on the committee determining his guilt or innocence and acted in the capacity of two different members of the committee. (*Id.*) Plaintiff claims other inmates at CEN were given fair and impartial hearings. (*Id.* at 5.) Plaintiff alleges Defendant Nichols "made the final decision to deny Plaintiff overnight family visits permanently." (*Id.*) Plaintiff further claims that the decision to deny Plaintiff overnight visits was in retaliation for the previous disciplinary hearing on September 23, 2010, at which Plaintiff was found "not guilty" of a conspiracy to traffic a controlled substance.

**II.   Defendant's Motion to Dismiss**

    **A.   Defendant's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6)**

Defendant seeks dismissal of Plaintiff's Second Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that: (1) Plaintiff fails to state a Fourteenth

Amendment equal protection claim; and (2) Plaintiff fails to state a claim for First Amendment retaliation.[2]

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

/ / /

/ / /

---

[2] The Court has previously dismissed Plaintiff's Fourteenth Amendment due process claim without leave to amend. (ECF No. 25 at 6.)

### C. Application to Plaintiff's Complaint

#### 1. Fourteenth Amendment Equal Protection claim

Plaintiff alleges his right to equal protection was violated by the manner in which his disciplinary hearing was conducted and claims "other inmates housed at Centinela State Prison were allowed to have fair and impartial Unit Classification Committee hearings." (SAC at 5.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 472 U.S. 432, 439 (1985). If Plaintiff were a member of a "suspect" class, he would have to show that the "defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Here, there are no allegations contained in Plaintiff's SAC that would suggest that he is a member of a "suspect class." As Defendant correctly notes, prisoners are not a suspect class. *See Rodriquez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999).

Where such a claim does not involved a "suspect class," equal protection claims arise under a "class of one" theory where the Plaintiff claims that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, Plaintiff's alleges that he has been denied equal protection with his broad assertion that "other inmates housed at Centinela State Prison were allowed to have fair and impartial Unit Classification Committee hearings." (SAC at 5.)

Defendant requests that the Court take judicial notice of a probation officer's report dated December 12, 2000. (ECF No. 27-1.) A court may take judicial notice of undisputed matters of public record. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (noting that a court make take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment.) Plaintiff

does not object to Defendant's request for judicial notice of the probation officer's report or dispute the validity of the report and thus, the Court grants Defendant's request for judicial notice.

In revoking Plaintiff's overnight family visit privileges, Defendant relied upon § 3177(b)(1) which states that:

> "Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code sections: 187 (when the victim is a family member as defined by Section 3000 or minor); 192 (when the victim is a family member or minor); 243.4; 261; 261.5; 262; 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6 ."

CAL. CODE REGS., tit. 15 § 3177(b)(1). In previous pleadings, Plaintiff had argued that there was no rational basis to apply this regulation to him because he had not been convicted of any penal code section listed. However, Plaintiff no longer presents these arguments and does not challenge that there was a basis, based on his criminal history, for applying this code section to him.

Instead, Plaintiff argues that there is no rational basis for revoking these privileges because he had previously been receiving this privilege for fourteen (14) years. Plaintiff argues that prior classification committees had access to the same information and chose not to ban Plaintiff from overnight family visits. (*See* Pl.'s Opp'n at 2.) The right to overnight family visits is not a fundamental right. *See Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("It is well-settled that prisoners have no constitutional right while incarcerated to contact visits.") Therefore, the Court must apply the deferential rational basis standard to Plaintiff's claim. *See Heller v. Doe*, 509 U.S. 312, 319-21 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). Courts have long held that there are legitimate security concerns with permitting contact or overnight visits. *See Block v. Rutherford*, 468 U.S. 576, 586 (1984) ("That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion.").

Defendant argues that Plaintiff's reasoning would require them to allow him to continue a privilege that he is not entitled to simply because they had erred in allowing him this privilege previously in violation of their own regulations. Plaintiff does not argue with the validity of the regulation nor does he present any claim that this regulation is not applicable to his situation.

The plain language of the regulation states, in part, that "[f]amily visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense." CAL. CODE REGS., tit. 15 § 3177(b)(1). This language is not discretionary. The classification committee, given the information which is undisputed by Plaintiff, was obligated to revoke these family overnight visits. While Plaintiff argues that his hearing was not fair and impartial because of the presence of Defendant Nichols, it is clear from the record that regardless of who was on the classification committee, they would be required to revoke these privileges. The Court finds that Plaintiff fails to show that there is not a rational relationship to a legitimate state purpose in revoking his family overnight visits. Thus, Defendant's Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claims is **GRANTED**.

### 2. First Amendment retaliation claim

To the extent Plaintiff claims Defendant Nichols retaliated against him, he must allege facts to support the following five factors: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); *see also Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam), *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997).

On September 23, 2010, Plaintiff alleges that he was found "not guilty" for a rules violation in which he had been charged with conspiracy to traffic a controlled substance into a state prison with the intent to distribute. (*See* SAC at 7.) Plaintiff claims that

because he was found "not guilty," Defendant Nichol retaliated against him by revoking his overnight family visits. (*Id.*)

First, Plaintiff's Second Amended Complaint lacks allegations that he was engaged in any "free speech" protected by the First Amendment. Instead, he sets forth only conclusory allegations that Defendant retaliated against him because he prevailed in a disciplinary hearing. Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Here, there are no allegations regarding actions taken against Plaintiff because he was attempting to file grievances or pursue civil litigation.

Second, Plaintiff has the burden to allege facts to show that Defendant Nichol's alleged retaliatory action "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. Restrictions curtailing forms of visitation have been found to be legitimate penological goals. *See Overton v. Bazzetta*, 539 U.S. 126, 133 (2003) ("[F]reedom of association is among the rights least compatible with incarceration" and "some curtailment of that freedom must be expected in the prison context"); *see also Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits."). Plaintiff has plead no facts from which this Court could find that restricting certain forms of visitation does not advance a legitimate penological goal.

Therefore, Defendant's Motion to Dismiss Plaintiff's retaliation claim is **GRANTED**.

### III. Conclusion and Order

Based on the foregoing, the Court hereby:

**GRANTS** Defendant Nichol's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6). (ECF No. 27.) Moreover, because the Court finds amendment of Plaintiff's claims would be futile at this time, leave to amend is **DENIED.** *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (denial of a leave to amend is not an

1  abuse of discretion where further amendment would be futile).

2  In a footnote on page 11 of his opposition to the motion to dismiss, Plaintiff seeks
3  leave to amend his complaint to add J. Calderon as a defendant who conspired with
4  Nichols.  However, for the reasons set forth above, no claim would be stated against
5  Calderon.  Therefore, the amendment would be futile, and leave is DENIED.

6  The Clerk of Court shall enter judgment for the Defendant and close the file.

7  **IT IS SO ORDERED**.

9  DATED:  October 14, 2014

10  _____
    BARRY TED MOSKOWITZ, Chief Judge
11  United States District Court